136573, Charles Wright v. Warden, Riverbend Maximum Security Institution. Arguments not to exceed 30 minutes per side. Ms. Henry, for a comment. May it please the court, my name is Kelly Henry. It's my honor and privilege to present argument this afternoon on behalf of Charles Wright. I'd like to reserve five minutes for the court. That would be fine, and you may proceed. Thank you, Your Honor. Your Honor, this case presents the scenario that Justice Kennedy in the Martinez case found to be intolerable. Charles Wright has been denied a fair opportunity to present his bedrock claim of ineffective assistance of sentencing counsel in this capital case due to the ineffective assistance of his post-conviction attorney. Mr. Wright has a substantial claim of ineffective assistance of counsel that he has a right to present now under the court's decisions in Martinez and Trevino. There are seven equitable reasons why this court should exercise its Article III jurisdiction to remand this case to the district court for purposes of conducting a hearing on Mr. Wright's claim of ineffective assistance of sentencing counsel. Those seven claims are briefly, and then I'll discuss them all in detail. One is the historic nature, to quote Justice Kennedy in Trevino, of the Martinez decision. Second, the fact that the Martinez and Trevino rules are tethered to a bedrock principle of constitutional importance, that being the Sixth Amendment right to counsel. Third, this is a capital case, and Mr. Wright stands to be executed without ever having an opportunity to have his claim heard. Fourth, Mr. Wright has been extraordinarily diligent, more diligent, I would suggest, than any other habeas petitioner this court has seen in pursuing his claim of ineffective assistance of post-conviction and sentencing counsel. Fifth, the timing of this case. Mr. Wright brought his case to the court in extraordinarily diligent time, two days after Trevino became final on appeal in front of the U.S. Supreme Court. Sixth, the strength of the claim. And seventh, the fact that the State has no compelling interest in finality under the facts and circumstances of this case. Counsel, I'd like to ask a question about what exactly is before us. Your argument relies on these declarations of the sister and other family members. Is that correct? That's the argument you want to present that we previously held was procedurally defaulted. Yes, sir. This afternoon we're focusing on the personal history mitigation claim that is contained and supported by the declarations of several family members, not just Ms. Wright. Right. But all of those were before us the last time around. We just didn't rely on, we didn't address them because we found that they were procedurally defaulted. Yes. Is that correct? Yes. But the way I read our opinion, though, we relied on two grounds with respect to those affidavits. One was that they were procedurally defaulted. And secondly, that even if not procedurally defaulted, they were insufficient. Is that a fair reading of our opinion? Judge Rogers, I read the opinion to be slightly different than Your Honor does, and this is why. With respect to the discussion, of course, prior opinion discusses only the Rosie Wright declaration, not the other declarations. It says the declaration is presented by the family members. It doesn't say by Rosie Wright. Right. It says second. I'm looking at page 16 of the draft opinion. I don't have the Fed Third Cite, but it's the same paragraph we're talking about. Yes, sir. It says second, which just means additionally. Nothing in the additional declarations, plural, presented by Wright's family members renders the state court's determination unreasonable. So why isn't that an alternative basis for rejecting the claim? Because, Your Honor, that last clause that you were reading, which had to do with rendering the state court's determination of the ineffective assistance of counsel claim, that those declarations did not render that decision, the state court decision, unreasonable. I read the second part of the court's decision as actually being a faithful application of pinholster to 2254D. Given the fact that these declarations were not properly before the state court, the state court's determination was not unreasonable, but the court's decision It says nothing in the declarations presented renders the state court's determination unreasonable. Then it goes on to explain the decision not to call any family members other than the mother was made after a reasonable investigation including extensive contact with Wright's family members. Wright never alleges that his attorneys failed to speak to Rose Wright, and Rose Wright's testimony would have painted a more vivid picture. These seem to be the same arguments that you're making now. Those are the same arguments we're making, Your Honor, but I read the opinion as tethering those arguments to whether or not the court could rule that the state court decision was unreasonable because the court couldn't have made it. That's the issue under Epa, right, is whether the state court's decision is unreasonable. As to the claim that was presented to the state court, but now we're in a completely new territory, Your Honor. Under Martinez, we're talking about a claim that was not presented to the state court. The personal history as mitigation claim was not presented under this court's ruling, and plainly it wasn't. But we knew that back then, didn't we? Yes, sir, which is why I think the court made a reasonable and faithful application of pinholster to the facts that were presented and found that our affidavits didn't establish that. How does Martinez change that? I'm trying to understand it. I'm just not understanding it. Martinez deals with, and Trevino, they deal with whether there's procedural default or not, right? Yes, sir. So if we assume for purposes of argument that there's been no procedural default, then you would apply whatever the law is, pinholster or not, right? And I'm So you're not making your claim based on pinholster. You're making it for some change in pinholster. I mean, Martinez didn't change pinholster, did it? No, sir, pinholster and Martinez are completely different. I agree with you. So I'm still having trouble seeing why this isn't an alternative holding on the very claim that you're talking about that we decided in the alternative that's gone to the Supreme Court. I mean, that's why you make alternative holdings is in case one of them falls apart at some point, right? So what? I don't know. That's what you have to convince me of, and I'm not seeing it right now. Let me try. Okay. I can. I read the Court's opinion as being tethered to what was decided in the state court. You were deciding But that's what we're supposed to do, though, right? And I don't quibble with what the Court Maybe we were wrong. I mean, I'm not here saying this is necessarily right. I'm just saying it's not based on procedural default. And so it's not infected by whatever change in the law there is that you're relying on. Is there anything in this paragraph that's based on procedural default? No, sir. I believe that the paragraph is based on the fact that the new procedurally defaulted facts cannot cause the state court decision that did not deal with those facts to be unreasonable. And so if I was here trying to relitigate what was raised in state court, the state court ineffective assistance of counsel claim was that counsel was ineffective for failing to present mental health evidence, Dr. Anker's report. That was all that was presented and litigated in state court. That decision the court found to be unreasonable, and this court found that the declarations couldn't render the decision not to call the psychiatric evidence witnesses unreasonable. That's not the argument here today, Your Honor. Let me try it a different way if I could, because I don't understand this either. I'm looking at the same Wright v. Bell, we call it Wright 1 decision, that you're discussing with Judge Rogers. Yes, sir. And in paragraph number 6, I think it's B6, it's discussing these declarations. And the first thing it talks about is the fact that Wright's claim that his trial attorneys failed to investigate and present evidence of his troubled family background is procedurally defaulted. So that's the first holding. Now, the second holding goes on to actually look at those declarations, notwithstanding the first holding that it was procedurally defaulted, and says nothing in them renders the state court's determination unreasonable. There's nothing about pinholster in any of these paragraphs. And so correct me if I'm wrong, pinholster would have been triggered if the decision was based on the fact that we're being asked to look at things that were outside the record that had not been presented to the state court, right? Yes, sir. There's no discussion about that in this opinion, nor does the context in which these paragraphs fall, from what I can tell, have anything to do with pinholster. So it's just a very simple, straightforward question that I think Judge Rogers and I would both like you to ask. Why are we not bound under the law of the case by this paragraph that starts with second, nothing in the additional declarations presented, for purposes of this 62B proceeding? And let me try it again. Maybe I'm not being clear. Well, I'm not sure you've really had an opportunity to fully explain what your response is. So aside from saying pinholster, which doesn't appear here, how do we even get to this? And again, from my reading of it, the court was looking at the state court ineffective assistance of counsel claim that was raised. That was what was before the court. That was what you were deciding. And the last sentence that the court has read says that those declarations do not render the state court decision unreasonable. But the state court decision was based on the claim presented to the state court, which is not the subject of the claim that we're here today. But let me get to whether or not this court's decision was even correct, because, quite frankly, it wasn't. That's a different issue. Can we change it now? That's not what Rule 60B motion is for, is to challenge a decision that we made before. In other words, you don't get a do-over under Rule 60B just because you think the panel was wrong the first time. That's not the way it works, particularly when it already went to the Supreme Court. So I would ask you to put aside for a second your do-over argument, Let's just finally get to the heart of how do we get around this opinion language that starts with the word second. If I'm wrong, if I'm reading your opinion wrong, and I don't think I am, I think that you were deciding the case based on the way habeas law was working in 2013, which radically changed with Martinez and Trevino. And I believe the court was faithfully applying habeas law as it occurred at the time and deciding whether or not new facts rendered the decision of the state court unreasonable, and that that sentence, that paragraph, must be read as commenting on only the claim that was presented in state court. But they're not new facts. If what you answered, Judge Rogers, earlier was correct, and that was, weren't all of these things before us before? They were before you, but not the state court, which is a difference. But here's where I think we may possibly be going awry, so let me try this out. Let's assume for a second that these additional facts were not before the state court. Let's assume that you're right, that when we're talking in this paragraph starting with the word second, we were assessing whether the state court was right in connection with what they had before them. It still goes on and actually looks at the material, and it says it wouldn't make any difference. I think that's the heart of my question and perhaps Judge Rogers' question. We looked at the material and said whether the state court had it or not, even if you get by procedural default and even if you can do this over under Martinez, you still can't show prejudice because it wouldn't have mattered. Can I pull up the court's opinion so that I make sure that I am remembering it correctly? Certainly. Of course. I don't remember the court saying second even if it wasn't procedurally defaulted. What I read is second nothing in the additional declarations presented by Wright's family members rendered the state court's determination unreasonable or contrary to clearly established federal law. That's 2254D. That straight merits habeas jurisprudence what was presented to the state court. It's not procedural default, though. It's not procedural default. If it's procedural default, you wouldn't even get to that. The paragraph just before it talks about procedural default. Correct, and says that our personal history is mitigation claim, which is what I want to talk about today, is procedurally defaulted and then goes on to talk about how those declarations could have any impact on that portion of Mr. Wright's claim that was not procedurally defaulted, the merits of his claim presented to the state court, which was a limited claim regarding the failure to call psychiatric witnesses. The court does not say that it's making an alternative holding here. The court does not say alternatively even if the claim was not procedurally defaulted, it still wouldn't have made a difference. The court very specifically did not do that. It instead said, looking at the evidence, it doesn't show a violation of 2254D1. Maybe that's where I get caught up in Penholster, and maybe I thought that that was where you all were going. I agree you didn't cite Penholster, but that is what Penholster was talking about, is unreasonable application in the state court, and we were looking at 2254D1. It doesn't make sense to me, and it's your opinion, not mine, so I don't know what was in your mind when you wrote it, but it's not written as an alternative holding in my mind. Is there, last attempt at me at this, where it says, second, nothing in the additional declarations. Are the declarations that you're premising this Rule 60B petition on, motion on, the same as the so-called additional declarations that are being referred to in this opinion regardless of why we're referring to them? Yes, sir. So there's nothing new? Yes, sir. Okay, so now explain to me, when we looked at those declarations, for whatever purpose, how Martinez then, Martinez allows the court under certain circumstances to look at things that were not previously presented and put before the district or before the state court because of their procedures at the time. Is that a rough paraphrase of that? Sure. Okay, so now, how does that even apply when we actually looked at this stuff? We argued it for two claims in two different ways in the opening briefs. So the court goes back and looks at the briefs on the initial appeal. We argued, and partially the reason we did that was because of the nature of the COA that was granted by Judge Haynes, and there was some confusion, as the court is well aware, as to what the holdings were in the district court on each claim. And so when we briefed the claim, we briefed not only, we wanted your, the court, we wanted your honors to consider those declarations with respect to the unreasonable application of Strickland as to the limited claim that was presented in state court. So we made that argument, but we made a separate argument that we had a stand-alone claim of ineffective assistance of counsel as to personal history mitigation. So there are two claims to which the same evidence is relevant. Prejudice is the same under, the prejudice standard is the same under both claims, is it not? The prejudice standard is the same, but the 2254D analysis would be different. I got that, but eventually we're going to get to prejudice on both of these arguments, right? No, because there was a strategic reason given for not calling the psychiatric witnesses that rendered the decision of trial counsel in not calling Dr. Anker to the stand as being reasonable, the court found. These additional declarations don't have anything to do with that. They're the family member declarations. And I think that's what the court was telling me. Why are you arguing this? Why are you saying that this in any way renders that decision by the state court to be unreasonable? The court found them to not render that decision unreasonable. If I was arguing to your honors today that I wanted to resurrect the ineffective assistance of counsel for failing to call Dr. Anker as a mitigation witness, then I would agree with you completely. So in essence, you're saying everything we're asking you about had to do with failure to call Dr. Anker, not whatever your new claim is under 60B? Yes, sir. Is that it? Yes, sir. Okay. That is my argument. You probably should have gotten to that a little earlier. I apologize, Your Honor. It wasn't raised in the briefs, and I should have been more prepared to answer the question. It is my fault, and I apologize for not being so. It would have been easier for you to answer it, perhaps, if it had been raised by the other side. Perhaps. But, you know, my opponent is a great lawyer, so I'm not going to cast any aspersions there. And it's my fault in failing to be clear. I would like to talk about my personal history as mitigation claim on behalf of Charles Wright because it is compelling, and it does establish why this court should exercise its Article III jurisdiction under 60B because we are talking about a capital case, and we are talking about a man who was sentenced to death on the basis of a false picture of who he was and how he got to be where he was because of ineffective assistance of trial counsel. We're talking about a man who the prosecution capitalized on that ineffective assistance of counsel by arguing him to be a remorseless, cold-blooded killer who would kill again in prison unless he was sentenced to death. I'm sorry to do this to you, but this is important to us. I'm here to answer your questions. I want to finish up our prior conversation. Yes, sir. What you want us to do, correctly, is look at the last part of the section of the opinion we directed your attention to, and you want us to make sure we put it in the right context, which you say was addressing the failure to call Dr. Anker, right? The second part was the failure to call Dr. Anker, yes, sir. Now, I go back to the beginning of this part of the opinion, which is B, and it talks about what your assertions were, and it says, Wright asserts his trial attorneys failed to investigate fully and present compelling mitigating evidence at the sentencing phase of the case. However, the record shows that Wright's attorneys conducted a complete investigation into Wright's personal characteristics, including extensive discussions with his family members and a psychological evaluation. It then goes on to say the record also indicates the district court correctly determined that the decision not to call Dr. Anker, so on and so forth. So this whole section B isn't tied only to your Dr. Anker claim. It's tied to IAC at the mitigation phase, which includes not talking to family members and not calling Dr. Anker. We found that the claim didn't have merit because, in fact, the record indicates that they did talk to family members. Now, you're now presenting some additional declarations of family members, but that's not new. The declarations that we're presenting are the same declarations, and they do establish that they were not talked to by trial counsel, and I can refer you to the specific pages in the appendix that establish that fact. But we've already found nobody prevented you from making that claim earlier, and we already found that there was a complete investigation into Wright's characteristics, including extensive discussions with his family members and a psychological evaluation. Now, I know you don't like that, and I know you think that that was wrong, but that was based on what we were presented. And so essentially, the way I would say it is you're trying to use Martinez to get a do-over, not for something that you were previously prevented from putting into the record, but something you already presented, and we already, correctly or incorrectly from your perspective, resolved. Therein lies the problem, as I see it, because I don't see these concluding paragraphs as being cabin to Dr. Anker at all, based on the introductory paragraphs. You see what I mean? I see exactly what you mean. Okay, so explain to me why I'm reading that wrong. And again, if I had to amend a petition here in front of you, and I could read to you how our allegations track your language, you would see that the claim with respect to Dr. Anker talked about failing to get the social history information to him, and the extensive investigation that they were talking about in the state court record, which is what this court was relying on, related to evidence regarding the psychiatric history. That's my position. I believe that the record will support me on that. But for us to corroborate that, then, what you want us to do is go back and look at your briefing that led to this language in this decision. Do you think that will elucidate this problem? I do. Okay, I got it. I got it. We'll do that. And we'd be happy to provide supplemental briefs on it. Well, we can go back and find those briefs and look at them. Thank you, Your Honor. With respect to the personal history as mitigation claim, it is a different claim from the claim that was presented in the state court. In the state court, the argument was that Dr. Anker should have been called to testify about Mr. Wright's characteristics for impulsivity, his low IQ, and his general character. That was what was raised in state court. That was what was litigated. That was what the evidence in state court addressed as far as the extensive investigation of trial counsel. That's not what's at issue here. That's not what was ruled upon by the district court judge, and I don't believe that that was what was ruled upon by this court. This court found the claim that we're trying to resurrect, the one that we believe that Martinez and Trevino give us the opportunity to present in Rule 60B, has to do with the personal history as mitigation, which shows conclusively, and it's not disputed, that the jury sentenced Mr. Wright on the basis of a false picture. It's a clear case of relief under Porter v. McCollum. Martinez itself, and I know I have one minute and 26 seconds, but I would like to talk a little bit about why we're different from McGuire, because I think that was one of the state's main arguments, if I may. And basically there are four reasons why Mr. Wright is different from McGuire. McGuire was a situation where Mr. McGuire abandoned his argument of ineffective assistance of post-conviction counsel after he lost before the magistrate. McGuire is a situation where he actually raised the claim at issue in state court on direct appeal, and there was no allegation of ineffective assistance of appellate counsel. McGuire is a case where the evidence that he presented was not substantially different from the evidence that was presented at his trial court, and it was a case where the court found that it wasn't a particularly compelling case for mitigation. Mr. Wright's case is completely different. He raised ineffective assistance of post-conviction counsel beginning in 1995 in the state court and pressed it all the way through this court. This court didn't have the authority in 2010 when it decided the case. To set aside 20 years of established precedent, Trevino talks about the decision in Martinez as being one that is historic, and we would argue that the incessant commands of justice in this case under all of the facts, considering the fact that this is not an aggravated capital case, one single aggravating circumstance, and that our mitigation would have caused at least one juror to vote for a sentence of life. Thank you. I know your time has expired, but Judge McKeek asked earlier, and I just want to make sure I understand, you agree that you need to show prejudice, actual prejudice. And what is it that you think would have persuaded one reasonable juror to vote for life as opposed to death? And I know you've talked generally about the personal mitigation issues, but what would be different other than we know about the troubled childhood and the impoverished background and what was just a very difficult situation for Mr. Wright growing up? What would have been different that would have caused a juror to vote for life as opposed to death? If you can answer that in 30 seconds or less. Well, for example, that his mother was a violent alcoholic who killed a man, that his father was so brutal that he shoved his mother's face over an open flame because she bothered to feed the children against his rule, the fact that these children didn't just grow up in poverty. They grew up in dilapidated, vermin-ridden shacks where a rat gnawed on the face of one of his sisters over 15 times. These children had to beg for food in the streets. This wasn't just coming out poor. This wasn't just a family who we tried hard but we loved. This was a family that grew up in chaos and trauma and violence that led him to be in a situation where he could be convicted. Okay. Thank you very much. You'll have your five minutes of rebuttal time. Thank you. May it please the Court, my name is Jennifer Smith with the Tennessee Attorney General's Office. I'd like to just come back to the posture of the case because I think it's important for us to remember where we are. And as I listened to my colleague's argument, which is always very good, it sounds very much like an argument the first time around in a habeas case. But where we are is with a Rule 60 motion in a situation in which the district court's decision to deny that motion, the review of that decision is very limited and subject to deferential review and an abusive discretion standard. And that's how we've attempted to address this in our brief. Because in this instance, we don't think that there was any such abuse given the fact that the single fact supporting the Rule 60 motion was the Martinez decision. Relief under Rule 60 requires extraordinary circumstances. It's granted in only the most extreme cases and situations in which equity demands relief. And this case simply does not rise to that level. Martinez itself, well, first of all, just to back up, it has long been the rule in federal habeas law that when a petitioner defaults on a constitutional claim in the state court, in order to receive federal review of that claim, he must show two things. First, cause for that default and actual prejudice arising from the constitutional violation. So it's a two-part analysis. Martinez only addressed half of that and only in a very narrow sense. Martinez said that it opened that cause analysis to an examination of post-conviction counsel's performance at the initial review stage of collateral proceedings as to certain claims, only trial counsel ineffectiveness claims. So it's a very narrow ruling. The ruling in and of itself is not extraordinary, just like in Gonzales. The ruling in Artuse v. Bennett was hardly extraordinary in the statute of limitations context. So just relying on the single fact of the change in decisional law, we think, doesn't get or should not get the petitioner through the door in terms of reopening a final judgment. And for that reason, we think that the district court in and of itself, for that reason, would support a finding that the court did not abuse its discretion in this case. But beyond that, the Martinez case is even less extraordinary in this case because, as I mentioned, it addresses only half of the equation. It only addresses the cause analysis. It left intact the requirement that petitioners must demonstrate actual prejudice to overcome a state court default. And as the court pointed out in its own decision, which we did not make the argument in our brief, I confess, but what we did was we looked at the district court's decision because the district court's denial of the Rule 60 motion was based principally on the fact that it had previously found that the petitioner had failed to demonstrate prejudice as a result of the procedural default. The analysis was extensive on the procedural default. It went through the arguments about cause. It went through the fact that post-conviction counsel or the performance of post-conviction counsel couldn't serve as cause. And clearly, this petitioner was making that argument all along, the very argument that Martinez addressed. The district court looked in its original decision at the law as it stood at the time and concluded correctly under then-existing law that the performance of post-conviction counsel could not serve as cause for the default. But the court went on, and we cited this in our brief, to make a specific finding that there was also no actual prejudice as a result of the alleged constitutional violations and referenced within that holding its previous holding about effectiveness in general. There were general claims that counsel was ineffective for failing to present certain mitigation evidence, and the district court and this court in its decision addressed that claim on the merits. I can see your argument, and I can see the strength of the district court's argument, but we wouldn't be bound by that in any way. We might second-guess that. We might say it was misguided in its evaluation of a claim that had previously been held to be defaulted, and you would make your argument, and the other side would make their argument. But if, in fact, before we rejected that very argument in the alternative, that would sort of pre-termit such an argument, wouldn't it? So, I mean, I don't want to criticize you for how you write your brief, but if you don't make that argument, it makes me wonder whether maybe you were assuming that what your opposing counsel says about how she read this is how you read it as well. Do you see what I'm asking? I read this court's decision in Part B as basically reaffirming what the district court already found as prejudice because what this court found was there's no prejudice. It doesn't make a difference. That's what the district court had already found. Right, but it makes a difference to us if we found it as opposed to whether the district court found it on remand. Well, I think the court did find it, and not pointing it out in the brief was my fault, but the standard of review is an abuse of discretion. In the district court, there's nothing in that finding where the court said, I'm not granting relief under Martinez because, number one, the Sixth Circuit has already determined in McGuire that the change in decisional law doesn't constitute an extraordinary circumstance for purposes of Rule 60, and, number two, even if it did, I've already found that there was no prejudice as a result of the default in any event, so motion for relief denied. That, we think, does not in any way constitute an abuse of discretion because it's correct. Let me ask the question this way then. How do you characterize this paragraph differently from the way your opposing counsel characterized it? She has an argument that the way, I guess the argument is, the way that the arguments were presented to us before would convey that this paragraph that starts with the word second was not talking about the claim that we said was procedurally defaulted in the immediate previous paragraph. Is that how you read her argument? As I look at what the court ruled. First of all, the court, as I read it. She's saying in order to understand it, we have to look at it in context with the briefs back then. As I read this opinion, this is the way I read the opinion. Number one, there was a question raised on appeal about whether the finding of default was correct because there was certain language in the state court's decision that suggested that the court may have implicitly addressed some of the claims on the merits. And so the court first rejected that and said clearly the state court found, applied a procedural bar and decided not to address the claim on that basis. So number one, this court affirmed the finding that the issue was procedurally defaulted, number one. Number two, and I haven't looked at the old briefs and don't know what's in them, but reading between the lines, it seems as if there may have been an argument by the state that the claims were essentially the same. They're not raising anything new. They're still talking about mitigation. And so it seems that the court went on to point out that, in fact, they are raising some different claims, maybe some additional facts. There are some new facts here. So we are talking about, number one, these things were defaulted, and they are different even though they have to do with background. There are new facts. There are additional facts. There are a little bit more of a gloss. I think you used the term. There's a much more vivid picture of the tragic circumstances of Wright's family. So the court makes it very clear that, number one, it's defaulted. Number two, these are different claims. So the court then goes on to say, based upon the reading of the evidence presented, which wasn't presented to the state court, which was only presented to the federal court, that in any event, it would not have made a difference. That's the way I read it. I read it as an alternative finding of no prejudice. The court doesn't say that, but that is the way I read it. In any event, nothing in the additional declarations renders the state court's determination, determination being the determination that counsel did not render ineffective assistance at the capital sentencing proceeding as unreasonable. That's the way I read the decision. That reading actually perfectly tracks with the district court's finding of no prejudice below. So, yes, the court could have relied on that. The court didn't. The court relied on its own finding. But, again, obviously this, I think, bolsters that, but I think in no way under those circumstances can this ruling be deemed an abuse of discretion, certainly given the narrow scope of Martinez. And I do want to address a couple of things in the reply brief because I know that the petitioner's counsel reads the state's brief as being hyper-technical and perhaps a too narrow reading of McGuire and being somehow some sort of bright-line rule. We view McGuire as perfectly in line with established case law about the fact that a change in decisional law in and of itself is insufficient to establish an extraordinary circumstance under Rule 60B, under most circumstances. Now, there are circumstances, as this court has recognized, in which a change in decisional law could constitute an extraordinary circumstance. For example, in the Blue Diamond Coal Company case, the court identified a situation in which a change in decisional law would generate divergent judgments between the same parties to the same litigation under the same set of facts. So, in that circumstance, the court found that equity and justice demanded that the judgment be reopened. That is not the situation here, obviously. The Ruiz v. Quarterman case dealt with a situation where there was a change in decisional law of a state court that materially altered the default status of the petitioner. The district court had originally found him to be defaulted. Erroneously, ultimately, the state court went in and looked at the claim on the merits, and then that petition was able to go back into federal court due to that erroneous default determination, which was subsequently corrected by the state court. So, that is not the situation in this case. The other category, which is similar, but is sort of the Thompson, Abdur-Rahman, and that line of cases in which there is a change in state procedural law that changes the balance of equities between the parties. And that's not a situation here. That had to do with the situation where the Tennessee Supreme Court actually amended a procedural rule that lessened the state's interest in finality. It actually lowered the procedural requirements for exhaustion. So, that's not the situation. Those are the types of situations where a change in decisional law could constitute an extraordinary circumstance. Martinez, in and of itself, does not. It is a non-constitutional, very narrow change to an equitable ruling, and this court has recognized that that is hardly the type of extraordinary circumstance that would justify a Rule 60 relief. A couple of points I would just make, and this is sort of a big theme in the reply brief, is the fact that this is a capital case, and we all recognize that, and we all recognize, and I think that the U.S. Supreme Court has in a number of cases, particularly in the Berger case that's cited in the reply brief, that capital cases do require special consideration. And that's true, and I certainly don't dispute that. But this case has already had that special consideration. Those cases deal with the initial proceeding, and that's exactly what this case got, notwithstanding the default. The district court did take a look at the additional material that was presented just to be sure that all the I's were dotted and the T's were crossed. This court, as well, looked at the additional material that wasn't presented to the state court. So we would submit that that special consideration in capital cases has already been accorded in this case, just as it is, just as this court does in all capital cases, and certainly I think the district courts do that as well. I'd like to ask you about the statement that you just made about the significance of McGuire and Trevino. We have said that McGuire and Trevino alone are not sufficient under Rule 60B because 60B requires extraordinary circumstances, and that alone doesn't amount to that. You've alluded to there are instances where there could be something more that constitutes additional circumstances. So if we were to look for that here, we'd look to see what else do they plead that would individually or collectively constitute those additional circumstances. We don't have a test for that, but there is a Ninth Circuit balancing test. Are you familiar with PHELPS? I don't remember whether it's discussed in the briefs. I'm sorry, I didn't go back and look. So it goes back and it looks at the nature of the intervening change, the exercise of diligence, the interest in finality, the delay, the degree of the connection between the case and Martinez, comedy. Those are the factors it's looking at. There are some factors that, while I didn't really spell it out as factors, that do seem to fit within that test. Diligence, for example, which Ms. Henry has already alluded to a couple different times, is one of the things that could arguably factor into an exceptional circumstances. So I'm wondering if you have anything you want to offer to guide us on how we determine whether there is something more than just the Martinez-Trevino case here because you want a cabinet to that, I understand that, but that does seem to be a little narrow. I would just go back, going back, and the reason I sort of cataloged those cases that had the additional factors and I did that really for this reason, to show that there are circumstances where there are these additional things. And those additional factors that I highlighted and the things that you just mentioned are things that actually change the balance of equities and change the interest, you know, the weight of the interest of the party's interest in the case. The problem with this case, as I see it, is that there's nothing beyond Martinez. There's nothing like the state's diminished interest in finality or something or some inequity between two similarly situated parties. There's nothing extra in this case beyond Martinez. The circumstances that Ms. Henry highlights, the fact that he had a horrible childhood, the fact that it's a capital case, these are all things that were taken into account in the original judgment. They're not things that are outside of the original judgment that really bear on that balance or change the balance of equities in any way. The diligence, I don't think, really should have any bearing at all because if that's the case, then individuals like Mr. Wright, whose judgment became final close to Martinez, somehow get more consideration than other inmates whose convictions, whose judgments became final much earlier. That doesn't seem to be a very—seems a little arbitrary to say, well, my judgment was final, very close to the determination in Martinez, and I immediately filed a motion to reopen. Well, lots of inmates immediately filed motions to reopen. In fact, we had an entire slew of motions to reopen in capital cases in Tennessee in the wake of Martinez and then subsequently in the wake of Trevino. So that's nothing that's particularly out of the ordinary. I mean, to me, it just shows the diligence of Ms. Henry and her team. I don't know whether what I'm about to ask you would fit within this extraordinary circumstances, so it would be sort of Martinez and Trevino plus something else. But when Judge Cole asked Ms. Henry what is it about this additional evidence that's set forth in these declarations that the jury didn't hear, she came up with a pretty compelling list of things that she thinks would potentially change the judgment of one juror. So how do you respond to that? I respond in the way that—and I don't want to sound like a broken record. The district court was aware of those things. The district court looked at the additional materials. This court looked at the additional materials. Those things were all considered in the context of whether or not the petitioner could demonstrate prejudice to overcome his procedural default. And the lower court and this court presumably rejected that. So are you essentially saying that even taking all those things as true, the district court's rejection of those as establishing prejudice is not an abuse of discretion? Is that what this comes down to? I think it's not an abuse of discretion because those matters were answered— You said no in answer to my question, but then you went on to give what I thought was a yes answer. No, I was trying to explain. No, I don't think it was an abuse of discretion, number one, because, number two, I think that all of those factors are encompassed within the very judgment that the petitioner is trying to disturb. All of those things were considered and are within the framework of the original case that they're now trying to come back in and reopen. But considered where? It wasn't considered by the jury because it wasn't presented. It was considered by the district court and by this court and by its own— Let me just take this one step at a time. So it wasn't considered by the jury. It wasn't considered by the state court because this wasn't presented. Therein lies the procedural default argument. So we're talking about was it presented to the district court then? The declarations presumably were presented to the district court, and the district court found that there was no showing of prejudice. This court, by its own opinion, noted that it had considered the additional declarations and found that it would not render the state court's decision unreasonable. So presumably all of that information was encompassed within the original judgment. And so there's nothing new about that. And Ms. Hering herself— I'm just having trouble following when you say the original judgment. Which one you mean? The judgment of this—the judgment of the district court that was affirmed by this court on appeal in 2010. That's the judgment that they're trying to disturb. So the district court—the federal district court in right one is what you're referring us to? Correct. Okay. I get it. Right. I mean because that's what—and that's why I started my argument with we're here on Rule 60. They're trying to disturb a federal court judgment denying habeas relief that encompasses a review of the very materials that they're presenting as an extraordinary circumstance to justify reopening. And that's where we think that their argument falls apart because there's nothing new aside from the intervening change of decisional law that has not already been before the district court and before this court. And because they're relying singly on Martinez and Trevino in combination we think that McGuire stands for the proposition and that it is not extraordinary. I think the Gonzales decision certainly supports that in the context of the statute of limitations argument. And we've cited numbers of other circuits who have taken that same position. If there are no further questions. Apparently not. Thank you very much, Ms. Smith. Thank you. Appreciate it. Before I get into discussing how this case was actually briefed by the state on appeal because I actually did bring Ms. Smith's brief with me or Mr. Gaylord's brief with me and going through this court's original decision which my able co-counsel Mr. Del Pino has gone through the court's decision for me and there's some things I'd like to point out. I would like to address Judge McKee, your point about the Feltz v. Almeida Ninth Circuit test. I'm very familiar with that test. That was the test that was applied in the Lopez v. Ryan decision which was my case. And the seven equitable factors which I outlined at the beginning of my opening argument essentially is the Feltz v. Almeida test. And I would argue that we meet all of the factors of Feltz in this case in our briefs if the court is convinced that we have a proper 60B before us, which I understand is in fact the question that your honors want answered here today. So if we could go back and look at how the state argued this case in right one. With respect to the claim that I'm arguing, this court found to be procedurally defaulted and only addressed on purposes of procedural default, the personal histories mitigation claim. What the state wrote was, Wright's claim that trial counsel failed to unearth the haunting details of his upbringing are, as the district court ruled, barred by procedural default. At the state evidentiary hearing on his first post-conviction, Wright presented no testimony from his family members and his post-conviction counsel's failure to do so cannot amount to cause to excuse his default. Later on, tellingly before this court, Wright makes no attempt to explain why eleventh-hour affidavits should be heard to substantiate an ineffective assistance of counsel claim. Instead, intertwining their contents with matters that were fairly presented to the state courts. That's at page 28 of the opening brief in right one. Clearly, the state and we thought that those claims were procedurally defaulted and believed that was what the court was addressing. Now, if we look at Judge Rogers and Judge McKeague, as she pointed out to me, section B, and I do this at great risk to my own ego to try to do this argument again, but Mr. Del Pino is helping me out here. If we look at the way the court structured its decision under section B, prior to getting to the question of the first versus second clauses, in the first paragraph, the court initially read to me from the beginning under head note three, and I'm at page 594 of 619F3rd. There is the general allegation, the summary, and we all have to speak in summaries and shortcuts. We all do that. I mean, that's the way these cases work. Wright asserts that his trial attorneys failed to investigate fully and present compelling mitigating evidence at the sentencing phase of the trial. But then when you go down to the end of the paragraph, beginning with the sentence that begins because, the court wrote, because the state court's determination that the performance of Wright's trial counsel was not constitutionally deficient and was not an unreasonable application of federal law, or contrary to clearly established federal law, the district court correctly determined that Wright is not entitled to habeas relief on this ground. I would submit that that is limiting it to the claim that was raised in state court, but we go on to page 595, where this court, again, when we look in the second column of the published opinion, midway through the page, this court referenced Judge Rogers' opinion, I believe. The state court correctly determined that Wright's trial counsel did not render ineffective assistance at the penalty phase. Again, we're talking about what the state court decided. Then we go down in that paragraph. Here, the state appellate court determined that Wright's attorneys performed a reasonable mitigation investigation. The failure to call Dr. Anker was reasonably strategic. That mitigation investigation had to do with calling Dr. Anker and calling Dr. Anker only. The next sentence, when a state court has adjudicated the merits of a habeas petitioner's claim, a federal court may not reach a different result simply because the court concludes in its independent judgment, and the court goes on to discuss the state court decision, again, limiting it to the Anker claim. Then we go to the top of page 596, again, addressing the state court record. Because the record amply supports the determination that Wright's trial counsel made strategic decisions about which witnesses to call, the decisions that they were making was about whether or not to call Anker as a witness, and these decisions were supported by reasonable investigation as to Anker. Why are you reading that part to be limited to Anker? Because we're talking about the state court's determination of reasonableness, and the only thing, when you look at the state court's decision, the only thing they were looking at was the investigation that led them to decide not to call Anker because that was all that was presented. That was all they were deciding. And then if we go down into the middle of the next paragraph, yet as the state appellate court determined, Wright's attorneys conducted substantial investigation and prepared for the sentencing phase of the trial. And then page 597, at the top, paragraph 5, addressing the claim specifically. I mean, and the court did what courts always do. You're talking about general claims, the general nature of the ineffective assistance of counsel claim, and you're using phrases that we're used to using, failure to investigate to call a witness. Well, the witness was Anker. Headnote 5, Wright. I'm sorry, Your Honor. I see I'm out of time. May I? I'd like you to finish this. If you could identify these paragraphs by the first words of the paragraph, it would be easier for me. Certainly, Your Honor. I'm sorry. Headnote 5, beginning with Wright argues that the decision not to call Dr. Anker could not have been strategic because Wright's attorneys merely forgot to call Dr. Anker. And then that whole sentence goes on to just talk about the state court's decision in not calling Anker. All right. And then there is discussion about, as Wright sees it, the mitigation investigation conducted by attorneys and then goes on to discuss the broader investigation that we claim should have been conducted. But then after discussing that, immediately proceeds to find that that claim is defaulted. But then go to 6. Wright also argues, and it goes on to talk about the claims beyond Anker. Yes, sir. It first analyzes the also argument in the context of procedural default and then, as I read it, addresses it on the standpoint of prejudice. And there they seem to be addressing this additional Wright argument that deals with the family members as opposed to Dr. Anker. So why do you think that reading of that is wrong? Because I think what the court was doing was addressing the intertwining of the defaulted claim with the non-defaulted claim, as the state pointed out in their brief. And so the court said, okay, the petitioner is arguing the state court record is unreasonable for these reasons, but now they've added these additional reasons, and we're finding under 6, if we go to the conclusion of 6, the paragraph begins, Wright also argues, the last sentence, but Wrights later claimed that his attorneys failed to investigate his family background was fundamentally different from the claim addressed by the state courts. And then the second, I believe, structurally under the way of the opinion. Pardon me, just so I understand. The fundamentally different is what keeps it, what makes it procedurally defaulted. If it was intertwined, it wouldn't have been defaulted, the argument. I argued that it was intertwined, and you told me I was wrong. And you were right, and I was wrong. I was making an argument. Right, right. And you said, wrong argument, counsel. It's defaulted. And so we're not going to consider that in the context of whether or not the state court determination was unreasonable. And so when you go to second, I believe first is, okay, we're taking this stuff out. We're not considering it as procedurally defaulted. And then second, when we apply it to the state court determination, we're going to say that that doesn't make the state court determination unreasonable. In other words, that second is limited only to the anchor claim, structurally under the way the opinion is written. And that makes sense when you look at the way the case was briefed. That's my best shot. I appreciate your Honor's giving me extra time to explain our positions. And, again, would welcome the opportunity for supplemental briefing. Thank you. Okay. Thank you, counsel. We certainly appreciate your arguments today. We'll let you know if we think there's a need for supplemental briefing. But otherwise, we will.